UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-10785-JLS-AGR                                                   Date: March 24, 2025
Title: Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Kelly Davis | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS:  (IN CHAMBERS)  ORDER DENYING PLAINTIFF'S MOTION TO REMAND (Doc. 9)**

Before the Court is a Motion to Remand filed by Plaintiff. (Mot., Doc. 9.) Defendant opposed, and Plaintiff replied. (Opp., Doc. 13; Reply, Doc. 15.) Having taken this matter under submission, and for the following reasons, the Court DENIES Plaintiff's Motion.

**I.     BACKGROUND**

This is a putative wage-and-hour class action brought by Plaintiff Saranay Sonny Ballungay against his former employer, Defendant Ricoh USA, Inc. (*See* Compl. ¶ 8, Ex. 1 to Notice of Removal ("NOR"), Doc. 1.) Plaintiff seeks to represent himself and "all similarly situated aggrieved service technicians employed by Defendant in California during the four years preceding the filing of this complaint to the present." (*Id*. ¶ 17.)

Plaintiff's claims arise out of Defendant's alleged practice of "requir[ing]" service technicians to drive their personal vehicles "from their homes to and from customer sites while transporting the necessary tools and equipment to do the job." (*Id*. ¶¶ 9, 24.) Plaintiff alleges that he and the proposed class members "work[ed] in excess of 8 hours per day and 40 hours per week" during "all relevant periods" but that Defendant did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-10785-JLS-AGR    Date: March 24, 2025
Title: Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

pay them for "their time spent driving their personal vehicles to and from the first and last job site of the day, transporting the tools, parts, and equipment necessary to do their jobs." (*Id.* ¶ 24.) Plaintiff further alleges that Defendant would not "begin paying service technicians for their time worked until the technicians had either driven a certain number of miles, *e.g.*, 15 miles or 25 miles, or arrived at the first customer location of the day", and that "[t]he same was true for the travel time from the last work assignment of the day to the technicians' homes." (*Id.* ¶ 11.) Similarly, Plaintiff alleges that Defendant "required all the service technicians to [either] drive a certain number of miles … or arrive at the first customer of the day, before Defendant began reimbursing technicians for their miles driven." (*Id.* ¶ 13.) As a result, Defendant allegedly failed to "pay Plaintiff and class members all overtime compensation owed" and to "reimburse Plaintiff and class members for all miles driven in their personal vehicles for work." (*Id.* ¶¶ 25, 30.)

On November 5, 2024, Plaintiff filed suit in Los Angeles County Superior Court, asserting claims against Defendant for (1) failure to pay wages, in violation of Cal. Lab. Code §§ 201–203, 510, and 1194; (2) failure to reimburse business expenses, in violation of Cal. Lab. Code § 2802; (3) failure to furnish accurate wage statements, in violation of Cal. Lab. Code § 226; (4) unfair business practices, in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; and (5) civil penalties pursuant to the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.* (Compl. ¶¶ 23–45.) The Complaint alleges that Plaintiff "is, and at all relevant times was, a resident of the state of California" and that "the damages, back wages, restitution, penalties, interest, and attorneys' fees [sought] do not exceed an aggregate of $4,999,999.99." (*Id.* ¶¶ 5, 17.)

On December 13, 2024, Defendant timely removed the action to federal court, invoking this Court's jurisdiction under the Class Action Fairness Act ("CAFA"). (NOR ¶ 6.) Defendant alleges that it is a citizen of Delaware and Pennsylvania, as Defendant is incorporated in Delaware and has its headquarters in Pennsylvania. (*Id.* ¶ 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                  Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

Contending that the amount in controversy exceeds CAFA's $5,000,000 threshold, Defendant makes the following assumptions regarding the frequency of the wage-and-hour violations that Plaintiff alleges:

- **Failure to Pay Wages Claim**: 1 hour of unpaid overtime wages per putative class member per week (*Id.* ¶ 22);

- **Failure to Reimburse Business Expenses Claim**: Each putative class member drove 30 unreimbursed miles, 5 days per week (*Id.* ¶¶ 26–27); and

- **Failure to Furnish Accurate Wage Statements Claim**: all 193 employees who can assert this claim can recover the maximum $4,000 penalty (*Id.* ¶¶ 29–30).

Employing these assumptions, Defendant estimates that its damages exposure is roughly $6.5 million.  (*Id.* ¶ 32.)  Defendant then adds 25% of that amount to represent what it contends to be a reasonable estimate of attorneys' fees—arriving at a total estimated amount in controversy of about $8.1 million.  (*Id.*)

## II.    **LEGAL STANDARD**

"[CAFA] vests federal courts with original diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, (2) the proposed class consists of at least 100 class members, (3) the primary defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief, and (4) any class member is a citizen of a state different from any defendant."  *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *1 (C.D. Cal. Feb. 5, 2018) (Staton, J.); 28 U.S.C. § 1332(d).  "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                              Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

"In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Where the complaint "does not specify the damages sought, the defendant ordinarily may satisfy the amount-in-controversy requirement by making a plausible assertion of the amount at issue in its notice of removal." *Moe v. GEICO Indem. Co.*, 73 F.4th 757, 761 (9th Cir. 2023).  However, where damages are not evident from the face of the complaint, and federal jurisdiction is questioned on that basis, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Ibarra*, 775 F.3d at 1197.  "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." *Id*.  "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id*. (citing *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)).  Under this system, a defendant may not establish federal jurisdiction "by mere speculation and conjecture, [or] with unreasonable assumptions"; rather, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation." *Id*. at 1197–98.

### III.    **DISCUSSION**

Plaintiff argues that remand is proper because (1) Defendant has not shown that minimal diversity exists, and (2) Defendant has failed to establish by a preponderance of the evidence that CAFA's amount-in-controversy requirement is met.  (Mot. at 14–26.) The Court addresses each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                                    Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

### A. Diversity of Citizenship

The Court has no trouble concluding that CAFA's minimal-diversity requirement is satisfied. This requirement is met if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For purposes of assessing diversity, a corporation is deemed to be a citizen of every state where it has been incorporated and where it has its "principal place of business." *Id.* § 1332(c)(1).

It is undisputed that Plaintiff, who has resided in California at all times relevant to this action, is a citizen of California. (Mot. at 14; Compl. ¶ 17; NOR ¶ 9.) Defendant alleges that it is incorporated in Delaware and that its principal place of business is in Pennsylvania. (NOR ¶ 11.) Plaintiff does not contest that Defendant is incorporated in Delaware; Plaintiff disputes only whether Defendant's principal place of business is in Pennsylvania. (Mot. at 14–15.) A corporation's principal place of business is its "nerve center"—the place where the corporation's "high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). A corporation's "nerve center" will "typically be found at a corporation's headquarters." *Id.* Here, Defendant asserts that its headquarters are located in Pennsylvania, where Defendant's "senior corporate officers … exercise day-to-day control of the business and perform their executive and administrative functions." (NOR ¶ 11.) Defendant has also provided the declaration of its "Director, HR Business Partner", Terri Jimenez, who states that Defendant's "high level corporate officers (including its Chief Executive Officer, Senior Vice President of Human Resources, and General Counsel) are based in Pennsylvania.[1] (Jimenez Decl. ¶¶ 1–3, Doc. 13-2.) As

---

[1] Contrary to Plaintiff's assertion otherwise, the Court may properly consider evidence submitted by Defendant in its opposition to remand, even though this evidence was not submitted with its Notice of Removal. *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *3 (N.D. Cal. June 14, 2013) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:24-cv-10785-JLS-AGR | Date: March 24, 2025 |
| Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al | |

Plaintiff proffers no evidence to refute these facts, and no evidence suggests that Defendant's "nerve center" is in California, the Court concludes that Defendant's principal place of business is in Pennsylvania.

In sum, Plaintiff is a citizen of California, and Defendant is a citizen of Delaware and Pennsylvania.  CAFA's minimal-diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

### B. Amount in Controversy

Plaintiff argues that Defendant has not met its burden to show that the amount in controversy exceeds CAFA's $5 million threshold because the assumptions underlying Defendant's calculations are "unreasonable" and "unsupported by any evidence."  (Mot. at 15.)  As noted above, a removing CAFA defendant may not establish the amount in controversy "by mere speculation and conjecture, [or] with unreasonable assumptions."  *Ibarra*, 775 F.3d at 1197–98.  It must instead rely on "real evidence and the reality of what is at stake in the litigation."  *Id.*

However, the Ninth Circuit recently shed light on how district courts are to assess the reasonableness of a removing defendant's assumptions in a CAFA case:

> What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue. For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number. *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 917 (11th Cir. 2014) (noting that a CAFA defendant has "access to its own employment records" and can provide information

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                         Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

> derived from those records "without conceding liability or being unduly burdened"). By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint.

*Perez v. Rose Hills Co.*, 2025 WL 811096, at *3 (9th Cir. Mar. 14, 2025) (emphasis in original). The *Perez* court went on to clarify that the assumptions underlying a removing defendant's violation rates "do not necessarily need to be supported by evidence" if the assumptions are "founded on the allegations of the complaint." *Id*. The district court must determine, then, whether the defendant's violation-rate assumptions are based on a "reasonable interpretation of the complaint." *Id.* at *5. In so doing, district courts should bear in mind that an assumption "is not unreasonable simply because another equally valid assumption" may be drawn from the complaint. *Id.* at *4.

     Applying these principles here, the Court concludes that Defendant has met its burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Id.* at *3 (citing *Ibarra*, 775 F.3d at 1199).

     As an initial matter, Defendant has introduced evidence as to the size of the proposed class and the total number of workweeks at issue. The Jimenez Declaration states that, between November 5, 2020 and December 10, 2024, Defendant employed 258 non-exempt service technicians in California who were employed for a total of 41,600 weeks and were paid a "weighted average hourly rate" of $32.87. (Jimenez Decl. ¶¶ 7–8.) All but 2 of these 258 service technicians were full-time employees. (*Id.*) Thus, after removing the weeks attributable to the 2 part-time employees, the Jimenez Declaration states that the proposed class members were employed for a total of 41,406 weeks. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                              Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

While Plaintiff correctly points out that the Jimenez Declaration does not indicate whether these 41,406 weeks "account[] for sick and/or vacation time", (Mot. at 17), there is "no hard-and-fast requirement for an exhaustive reconstruction of Defendant['s] payroll history" in establishing the amount in controversy.  *Alvarado v. Scholle IPN Packaging, Inc.*, 2020 WL 6537652, at *4 (E.D. Cal. Nov. 6, 2020).  The Court declines to hold that this deficiency, on its own, renders Defendant's estimate of the total workweeks at issue too speculative to support its amount-in-controversy calculations.

Defendant estimates that its damages exposure exceeds $5 million based on Plaintiff's failure-to-pay-wages and failure-to-reimburse-business-expenses claims alone. (Opp. at 16–21.)  Defendant's calculations as to these claims assume that each class member (1) worked 1 hour of unpaid overtime per week and (2) incurred expenses for 30 unreimbursed miles per day, 5 days per week (*i.e.*, 150 unreimbursed miles per week). (*Id.*; NOR ¶¶ 22, 26–27.)

Although Defendant has not provided evidence to support these violation rates, Defendant argues that its violation-rate assumptions are founded on the allegations of the Complaint.  (Opp. at 16–20.)  The Court agrees.  The Complaint includes the following pertinent allegations as to the failure-to-pay-wages and failure-to-reimburse-business-expenses claims:

- "During all relevant periods, Defendant required Plaintiff and the members of the proposed class to work in excess of 8 hours per day and 40 hours per week."  (Compl. ¶ 24.)

- Defendant "required Plaintiff, and all similarly situated aggrieved service technicians, to use their personal vehicle to travel from their homes to and from customer sites while transporting the necessary tools and equipment to do the job."  (*Id.* ¶ 8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                          Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

- Defendant "did not beg[in] paying service technicians for their time worked until the technicians had either driven a certain number of miles, e.g., 15 miles or 25 miles, or arrived at the first customer location of the day.  The same was true from the travel time from the last work assignment of the day to the technicians' homes."  (*Id.* ¶ 11.)

- Defendant "required all the service technicians to drive a certain number of miles, for which Defendant did not reimburse the technicians, or arrive at the first customer of the day, before Defendant began reimbursing technicians for their miles driven."  (*Id.* ¶ 13.)

Critically, this is not a case where the defendant's labor-code violations are alleged to have occurred "at times", "occasionally", or even "regularly."  The Complaint here alleges that Defendant required every service technician to use a personal vehicle on the job, but unlawfully failed to pay and reimburse service technicians for at least some of the time they spent—and expenses they incurred—traveling to and from their first and last customer sites each workday.  Aside from Paragraph 11's reference to "15 or 25 miles", the Complaint makes no allegations as to how far away Plaintiff or any of the proposed class members lived from their first and last customer sites.  (Compl. ¶ 11.) Defendant's damages-exposure calculations thus rely on Plaintiff's examples to reasonably assume that each class member worked 15 minutes of unpaid overtime per workday (*i.e.*, 1 hour of unpaid overtime per week) and incurred expenses for 30 unreimbursed miles per workday.  (Opp. at 16–20.)  While "equally valid assumptions" could be made that would lower the amount in controversy below the jurisdictional threshold, the Court finds that Defendant's assumptions are sufficiently tethered to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                          Date: March 24, 2025
Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

systemic allegations of the Complaint.[2]  *Perez*, 2025 WL 811096, at *4–5.  Accordingly, these assumptions are reasonable.  *Id.*

Applying these assumptions, Defendant's damages exposure is reasonably calculated as follows:

- **Failure to Pay Wages Claim**: 1 hour of unpaid overtime per week × 41,406 workweeks × $45 hourly overtime rate[3] = $1,863,270.

- **Failure to Reimburse Business Expenses Claim**:  150 miles per week × 41,406 workweeks × IRS rate of $0.67 per mile[4] = $4,161,303.

Adding these amounts results in a total of $6,024,573.  Thus, even without considering Defendant's damages exposure on Plaintiff's inaccurate-wage-statements claim and attorneys' fees, the Court is convinced that the amount in controversy more likely than not exceeds $5 million.

---

[2] The Court notes that Plaintiff could have "constrained the range of assumptions that [Defendant] could reasonably adopt" had he, for example, included specific allegations in the Complaint as to how far away Plaintiff or any of the proposed class members lived from their first and last customer sites.  *Perez*, 2025 WL 811096, at *5.

[3] The Court's conclusion that the amount in controversy more likely than not exceeds $5 million would remain the same even if it used the proposed class members' average hourly rate of base pay ($32.87) for this calculation.  (Jimenez Decl. ¶¶ 7–8.)

[4] The IRS mileage rate is a "per se reasonable rate" for calculating reimbursable employee mileage expenses under California law.  *Del Thibodeau v. ADT LLC*, 2019 WL 1746141, at *4 (S.D. Cal. Apr. 18, 2019) (citing *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 569 (2007)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-10785-JLS-AGR                                   Date: March 24, 2025

Title:  Saranay Sonny Ballungay v. Ricoh USA, Inc. et al

**IV.    CONCLUSION**

For the above reasons, Plaintiff's Motion to Remand is DENIED.

Initials of Deputy Clerk: kd